UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Janice Marie Wurtele**

    v.                                        Case No. 14-cv-417-PB

**Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration**


## REPORT AND RECOMMENDATION

Janice Marie Wurtele seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for disability insurance benefits under Title II and supplemental security income under Title XVI. In support, Wurtele argues that the Administrative Law Judge ("ALJ") erred in assessing the medical opinion evidence, which led to an incorrect residual functional capacity assessment. The Acting Commissioner moves to affirm. For the reasons that follow, I recommend that this matter be remanded for further proceedings consistent with this Report and Recommendation.


## Standard of Review

In reviewing the final decision of the Acting Commissioner

in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Background[1]

Wurtele applied for disability insurance benefits and supplemental security income ("SSI") on October 4, 2007, alleging that she had been disabled since August 21, 2007. Wurtele was 46 when she applied for benefits and SSI and had completed four years of college.

A.   Medical Evidence

The medical records begin in September of 2007 when Wurtele

---

[1] The background section is taken substantially from the parties' Joint Statement of Material Facts (Doc. No. 11).

visited Monica Edgar, ARNP, of Concord Psychiatric Associates. Although Wurtele saw Nurse Edgar for a psychiatric appointment, Nurse Edgar's notes stated that Wurtele had recently been hospitalized with pneumonia. Subsequent treatment notes show that Wurtele was doing fairly well with her depressive symptoms, but exhibited wheezing and easily became lethargic with shortness of breath.

In October of 2007, Wurtele was treated by Dr. Nicole Antinerella for pneumonia follow-up. Dr. Antinerella noted Wurtele's complaints of fatigue, malaise, and dyspnea on exertion. Dr. Antinerella allowed Wurtele to return to work on limited duty.

State agency evaluator Dr. Hugh Fairley completed a Physical Residual Functional Capacity Assessment on December 4, 2007. Dr. Fairley reported Wurtele could occasionally and frequently lift ten pounds, sit for about six hours in an eight-hour workday, and stand or walk for two hours maximum in an eight-hour workday. Dr. Fairley reported no manipulative, visual, or communicative limitations.

Wurtele attended a pulmonary consult with Dr. Thomas Akey on January 18, 2008. Dr. Akey noted a history of abnormal echocardiogram results suggesting pulmonary hypertension, a

3

chest x-ray during Wurtele's hospitalization for pneumonia showing a right lower lobe infiltrate, and mild exertional dyspnea.  Dr. Akey reported Wurtele had significant exertional shortness of breath, difficulty with stairs and her daily activities, and a mild dry cough.

State agency pulmonary board certified evaluator Dr. L. Bahadori completed a Medical Source Statement of Ability to do Physical Work-Related Activities on April 28, 2008.  Dr. Bahadori opined that Wurtele could sit for six hours without interruption and sit for a total of eight hours in an eight-hour workday.  He also opined that Wurtele could walk for fifteen minutes without interruption, stand for thirty minutes without interruption, and walk or stand for a total of two hours in an eight-hour workday.

On March 31, 2009, Dr. Akey completed a Pulmonary Residual Functional Capacity Questionnaire.  Dr. Akey reported that Wurtele had shortness of breath and fatigue, and that her pain and other symptoms would frequently interfere with her attention and concentration needed to perform even simple work tasks.

Dr. Edward Catherwood, a cardiologist, wrote an opinion letter for Wurtele on March 12, 2010.  Dr. Catherwood wrote that Wurtele had severe pulmonary hypertension as a byproduct of her

morbid obesity, and secondary hypoventilation syndrome with obstructive sleep apnea.  He also wrote that with medical treatment, Wurtele showed some improvement in her functional capacity, but remained dyspneic, and her condition had the potential to worsen over time.  Dr. Catherwood opined that Wurtele could, at most, do sedentary work.

On February 28, 2011, Wurtele had a functional assessment performed by Rachel Health, a physical therapist.  Ms. Health's clinical impression was that Wurtele's signs and symptoms were consistent with the physical therapy diagnosis of total body deconditioning, with fluctuating SPO2.  Ms. Health reported Wurtele's condition affected her ability to lift, bend, squat, kneel, crawl, dress her lower body, grip, stand, walk, work, get in and out of the car, and perform housework.  Ms. Health opined that job accommodations would be needed, and that Wurtele demonstrated the ability to work/function part-time, four hours per day and five days per week at a light capacity.

On May 31, 2011, Dr. Antinerella reported that she reviewed the functional assessment performed on Wurtele and agreed with the recommendation of a part-time work limitation.  Dr. Antinerella reported the combination of Wurtele's conditions, including severe obstructive sleep apnea, primary pulmonary

hypertension, restrictive lung disease, diabetes with painful neuropathy, labile blood pressure, and bipolar depression, and her extreme deconditioning and getting out of breath with minimal exertion affected Wurtele's ability to bend, lift, kneel, grip, stand, walk or work for a prolonged period of time. Dr. Antinerella agreed with the assessment that Wurtele should be limited to part-time work, four hours a day, five days a week at light capacity.

On February 24, 2014, Jeff Abrahamson, an Occupational Therapist, performed a Functional Capacity Evaluation.  Mr. Abrahamson reported near full levels of physical effort on Wurtele's behalf, and questioned the reliability and accuracy of Wurtele's reports of pain and disability, but did not "imply[] intent."  Mr. Abrahamson reported that Wurtele's occasional lifting and carrying was actually good for her age and gender, although they were limited by her shortness of breath and slow gait speed.

On April 14, 2014, Dr. Antinerella wrote an opinion letter for Wurtele based on a review of her records, as well as the records of Dr. Akey, who continued to treat Wurtele through 2014, and Dr. Catherwood.  Dr. Antinerella reported that Wurtele's pulmonary hypertension was found to be "primary" in

6

nature, which meant that there was no reversible cause; that it was managed with the use of a BiPAP machine, supplemental oxygen and medications.  Despite those treatments, however, Dr. Antinerella found that Wurtele's condition continued to gradually worsen with increasing fatigue, shortness of breath and decreased stamina.  Dr. Antinerella explained that Wurtele suffered from congestive heart failure, marked by occasional episodes of fluid overload and worsening shortening of breath, decreased oxygen levels and swelling and that her condition continued to slowly decline despite maximal treatment for her heart and lung disease.  Dr. Antinerella opined that Wurtele could sit with no limitation, and walk or stand for no more than one hour.  She opined that Wurtele could not maintain a full-time schedule due to her progressive, debilitating symptoms and that she was currently struggling to maintain working a part-time schedule.[2]

Dr. Antinerella disagreed with Mr. Abrahamson's functional capacity evaluation that suggested there were inconsistencies with Wurtele's reporting of perceived abilities when compared to

---

[2] At the time Dr. Antinerella wrote her opinion, Wurtele worked part-time as a sales clerk.

7

her demonstrated abilities.  She explained the evaluation did not fully represent Wurtele's limitations because the four-hour evaluation may not show the extent of her pain as she progressed through a day, and her symptoms "wax and wane" with good and bad days.  Additionally, Dr. Antinerella believed that Mr. Abrahamson's evaluation did not consider the impact of Wurtele's psychiatric illness on her ability to function.

B.   Procedural Background

Wurtele's application for benefits and SSI was denied at the initial level on December 6, 2007.  Upon Wurtele's request, two Federal Reviewing Officials reviewed her application.  In a written decision dated October 29, 2008, the reviewing officials denied Wurtele's application.

Wurtele requested a hearing before an ALJ with respect to her claim for benefits and SSI.  The ALJ held a hearing on March 19, 2010, and issued a decision denying benefits and SSI on March 25, 2010.

On June 28, 2010, the Decision Review Board ("DRB") remanded the case back to the ALJ.  The DRB stated that certain documents were received and considered at the initial level and by the Federal Reviewing Officials, but were not marked as exhibits in the record before the ALJ or included in the exhibit

list.  The DRB directed the ALJ to the documents in the record and ordered the ALJ to consider further Wurtele's bipolar disorder and the functional limitations imposed by her chronic obstructive pulmonary disease.

The ALJ held a second hearing on August 4, 2011, and issued a decision denying Wurtele's application on December 2, 2011.  The Appeals Council reviewed the decision and, on February 21, 2013, issued a decision denying Wurtele's application.

Wurtele appealed the Acting Commissioner's decision.  On October 25, 2013, the court granted the Acting Commissioner's assented-to motion to reverse the decision and remand the case for further action.  The Acting Commissioner's motion stated as follows:

> On remand, the case will be assigned to a new [ALJ] who will update the record and offer Plaintiff the opportunity for a hearing.  The ALJ will reconsider Plaintiff's residual functional capacity, paying particular attention to the medical evidence and opinions regarding Plaintiff's alleged manipulative limitations.  In so doing, the ALJ will re-evaluate all medical and other source opinion evidence of record, explaining the reasons for the weight assigned to each opinion.  If necessary, the ALJ will obtain medical expert evidence to clarify the nature, severity, and limiting effects of Plaintiff's impairments.  Also, if necessary, the ALJ will obtain supplemental vocational expert testimony.  The ALJ will then proceed through the sequential evaluation process and issue a new decision based on the total record.

Wurtele v. Colvin, 13-cv-178-JL, Doc. no. 10.

On remand, the case was assigned to a different ALJ. A hearing was held on May 1, 2014, and Wurtele and a vocational expert testified. Wurtele described her breathing difficulties, lack of energy, and general fatigue caused by the combination of her impairments. The ALJ issued his decision on May 30, 2014, finding that Wurtele was not disabled. Wurtele filed a timely complaint for review of the Acting Commissioner's decision.

## Discussion

Wurtele contends that the Acting Commissioner's decision must be reversed and remanded because the ALJ erred in assessing the medical opinion evidence, which led to an incorrect residual functional capacity assessment. The Acting Commissioner contends that no errors occurred and that substantial evidence supports the Acting Commissioner's decision.

The ALJ follows a five-step sequential analysis for determining whether a claimant is disabled. 20 C.F.R. § 404.1520.[3] The claimant bears the burden through the first four

---

[3] Because the regulations implementing the disability standard for social security insurance benefits, Title II, 42 U.S.C.A. § 423(d), and for supplemental security income, Title XVI, 42

10

steps of proving that his impairments preclude him from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the ALJ determines whether work that the claimant can do, despite his impairments, exists in significant numbers in the national economy and must produce substantial evidence to support that finding. Seavey, 276 F.3d at 5.

A. Medical Opinions

The ALJ gave great weight to the opinion of the non-examining state agency medical consultants, Dr. Fairley and Dr. Bahadori, and gave little weight to the opinion of Wurtele's treating physician, Dr. Antinerella. Wurtele contends that the ALJ erred in that assessment. The Acting Commissioner argues that the ALJ property weighed the opinions.

An ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record. 20 C.F.R. § 404.1527(b). Medical opinions are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that

---

U.S.C.A. § 1382c(a), are the same in all relevant respects, for simplicity, the Title II regulations in Part 404 will be cited for both. See Sullivan v. Zebdley, 493 U.S. 521, 526 n.3 (1990).

11

may be brought to the ALJ's attention.  § 404.1527(c).  A treating physician's opinion is given controlling weight, because of the nature of the treating relationship, unless that opinion "is inconsistent with other substantial evidence in the record."  DiAntonio v. Colvin, --- F. Supp. 3d ---, 2015 WL 1380105, at *11 (D. Mass. Mar. 25, 2015) (citing § 404.1527(c)).

### 1.   Dr. Antinerella's Opinion

The ALJ explained why he gave little weight to Dr. Antinerella's opinion that Wurtele's combination of impairments limited her to part-time sedentary work.  The court need not address whether the ALJ properly weighed Dr. Antinerella's opinion because, as discussed below, the ALJ erred in relying on the opinions of the state agency consultant physicians.

### 2.   State Agency Consultant Physicians' Opinions

The ALJ attributed great weight to Dr. Fairley's and Dr. Bahadori's opinions.  The ALJ may rely on opinions of state agency consultant physicians under the same analysis as that applied to opinions of treating or examining medical sources.  § 404.1527(e); Ormon v. Astrue, 497 F. App'x 81, 84 (1st Cir. 2012); Smallidge v. Colvin, No. 13-cv-80-SM, 2014 WL 799537, at *5 (D.N.H. Feb. 28, 2014); see also Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency

Medical and Psychological Consultants and Other Program Physicians, SSR 96-6p, 1996 WL 374180 (July 2, 1996). Because a consultant's opinion is based on a review of the record, a state agency physician's opinion can be given weight only to the extent the opinion is supported by evidence in the record. SSR 96-6p, 1996 WL 374180, at *2. A state agency physician's opinion that is based on his review of only part of the record cannot provide substantial evidence to support the ALJ's residual functional capacity finding if other evidence, not reviewed, supports the claimant's limitations. Alcantara v. Astrue, 257 F. App'x 333, 334 (1st Cir. 2007); Padilla v. Barnhart, 186 F. App'x 19, 20 (1st Cir. 2006); Jones v. Colvin, No. 14-030-M, 2015 WL 687219, at *13 (D.R.I. Feb. 18, 2015); Spielberg v. Astrue, No. 10-cv-463-PB, 2011 WL 4971971, at *6 (D.N.H. Oct. 18, 2011).

In explaining his reasoning for giving these opinions great weight, the ALJ stated:

> Although they were non-examining sources, who offered their opinions as to the claimant's functionality back in 2007 and 2008, I gave their opinions great weight because they are experienced in evaluating disability claims, they have familiarity with Social Security Disability program rules and regulations, and their opinions were in accord with significant other evidence of record, including more recent medical evidence. For example, I found their opinions to be

13

>    in accord with the claimant's activities, including
>    her continued part-time work as a sales associate, her
>    diminished credibility given multiple clinicians
>    concerns regarding the effort she put forth on
>    functional capacity evaluations, and the relatively
>    benign objective medical signs and symptoms, which
>    reflect the claimant underwent an April 2013
>    echocardiogram that was described as "reassuring,"
>    with "no significant changes from [a] 2010 [study]."
>    The claimant had normal left ventricle systolic
>    function, and only "mild pulmonary [hypertension]."
>    Further, it was remarked, "All in all, [the claimant
>    was] doing fairly well."  I also found their opinions
>    to be in accord with the fact [that] treatment notes
>    do not reflect the claimant has often complained of
>    symptoms of neuropathy in her hands, as she has with
>    respect to her legs and feet.  I found Dr. Fairley's
>    opinion to be reasonably consistent with the opinion
>    of Dr. Bahadori, whose opinion I also gave great
>    weight to because, as a board certified pulmonologist,
>    her area of specialty is relevant with respect to the
>    claimant's specific impairments.  Further, their
>    opinions were in accord with the opinion of Dr.
>    Catherwood, the claimant's lack of alleged physical
>    functional limitations beyond her breathing
>    difficulties in her initial functional report, and
>    especially her failure to allege any significant
>    trouble using her hands.

Admin. Rec. at 1015.

Dr. Fairley's opinion was based on the record as it existed on December 4, 2007.  Dr. Bahadori's opinion was based on the record as it existed on April 28, 2008.  For that reason, neither Dr. Fairley nor Dr. Bahadori reviewed (i) Dr. Akey's Pulmonary Residual Functional Capacity Questionnaire completed on March 31, 2009, or his treatment notes from 2008 – 2014; (ii)

14

Dr. Catherwood's opinion letter dated March 12, 2010; (iii) Ms. Health's February 28, 2011, functional assessment, (iv) Dr. Antinerella's May 31, 2011, report based on Ms. Health's functional assessment, or (v) Dr. Antinerella's April 14, 2014, opinion letter.

Dr. Fairley's and Dr. Bahadori's opinions were not based on the entire record, and importantly, did not address medical evidence in the record supporting Wurtele's ability to do only part-time work.  Although the ALJ largely discounted the more recent evidence, he did so, in part, simply because it was inconsistent with the opinions of Dr. Fairley and Dr. Bahadori.  See Admin. Rec. at 1015-16.  Therefore, the ALJ erred in relying on the state agency consultant opinions.

B.  Residual Functional Capacity Assessment

The ALJ found that Wurtele had the residual functional capacity to do full-time sedentary work with some postural and reaching limitations.  Although Dr. Fairley's and Dr. Bahadori's opinions support that finding, as explained above, their opinions were based on an incomplete medical record.  As a result, these opinions do not provide substantial evidence to support the ALJ's assessment.  No other opinion supports the ALJ's finding.

Because the ALJ is a lay person, except in rare cases he is "not qualified to interpret raw medical data in functional terms." Nguyen, 172 F.3d at 35; Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). Therefore, when a claimant's functional capacity is at issue, an expert's evaluation is essential "'unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.'" Manso-Pizarro, 76 F.3d at 17 (quoting Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991)).

The severity of Wurtele's impairments and the extent of her functional loss due to her various health issues are not apparent to a lay person. In particular, there is no acceptable medical opinion that Wurtele is capable of full-time work.

Therefore, substantial evidence is lacking to support the ALJ's residual functional capacity assessment. As a result, the ALJ's disability determination cannot be affirmed.

## Conclusion

For the foregoing reasons, I recommend that (1) the Acting Commissioner's motion to affirm (document no. 9) be denied; and (2) the claimant's motion to reverse and remand (document no. 8)

16

be granted, and the case be remanded pursuant to Sentence Four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Andrea K. Johnstone
United States Magistrate Judge

August 19, 2015

cc:  Bennett B. Mortell, Esq.
     Robert J. Rabuck, Esq.